IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRENDA ANN SCHWARTZ and PAUL GRANT
SCHWARTZ,

                 Plaintiffs,

     v.

ACCURATUS CORPORATION,
in its own right and as successor in interest to
Accuratus Ceramic Corporation,

               Defendant.

CIVIL ACTION
NO. 12-6189

## MEMORANDUM

**SCHMEHL, J.**                                             **March 30, 2017**

      This case, concerning Plaintiff Brenda Schwartz's injuries caused by exposure to beryllium allegedly carried home by employees of Defendant Accuratus, has returned to this Court following an appeal and remand. This Court previously dismissed the negligence claim against Defendant, holding that Defendant's liability under New Jersey law for "take-home" exposure did not extend to Mrs. Schwartz because she was merely a roommate and girlfriend of Defendant's employees rather than a spouse. The Third Circuit certified to the New Jersey Supreme Court the question of whether that state's law indeed limits take-home exposure liability to spouses; based on the response, the Third Circuit vacated this Court's decision and remanded for further proceedings consistent with the guidance provided by the New Jersey Supreme Court. In light of that guidance and absent a categorical bar to Mrs. Schwartz's claim as a non-spouse, this Court now denies the motion to dismiss.

Factual and Procedural Background

This matter has a complicated history. Some of the background can be carried over from this Court's prior opinion:

> The primary Plaintiff is Brenda Ann Schwartz ("Brenda"), who allegedly suffers a variety of adverse health effects associated with chronic beryllium disease. Her husband, Paul Grant Schwartz ("Paul"), brings a loss of consortium claim. Both Plaintiffs are Pennsylvania residents. Defendants Accuratus Corporation ("Accuratus") and Materion Brush Inc. ("Brush") are two companies with plants in New Jersey manufacturing beryllium products.

> As the name suggests, chronic beryllium disease results from exposure to beryllium, apparently in dust form; without undue focus on technical aspects at this stage, the factual and legal situation can be considered analogous to the more familiar issue of asbestos exposure. As with asbestos, exposure to beryllium can result from employment in facilities that work with it. However, Brenda was never employed by either Defendant; rather, she alleges she was exposed to beryllium carried home from work, on clothing and/or shoes, by Paul and a roommate named Gregory Altemose ("Altemose").

> Brenda and Paul met and began dating in 1978. Paul moved in with Altemose in 1979, and Brenda spent a lot of time at their apartment. In June 1980, Brenda married Paul and moved into the apartment, where all three lived together for a time. In 1978 and 1979—that is, when Brenda was merely dating Paul and visiting the apartment—Paul worked at Accuratus. Altemose also started at Accuratus in 1978, but continued working there until the present. Therefore, beryllium from Accuratus could have reached Brenda via Paul before they were married, or via Altemose, a roommate.

> From 1979 through 1987, Paul worked at Brush. In addition, in 1978 and 1979, when Paul worked at Accuratus, Brush sold beryllium products to Accuratus, which may then have been used in further manufacturing processes at Accuratus. Therefore, beryllium from Brush could have reached Brenda via Paul while they were married, with Paul bringing it home directly from his employment at Brush, or via Altemose or Paul prior to the marriage bringing it home from employment at Accuratus (where at least some of the beryllium came from Brush).

> Plaintiffs originally filed suit in state court. The suit named an additional Defendant, Dennis Tretter, a Pennsylvania citizen who was an Accuratus employee enforcing safety policies. On November 1, 2012, Defendants removed the action to this Court, arguing that Tretter was fraudulently joined to defeat diversity jurisdiction. Plaintiffs filed a motion to remand dealing with that issue, which Judge C. Darnell Jones denied on March 1, 2013. As discussed further below, Judge Jones's order (as well

as a subsequent order denying reconsideration on April 5, 2013) examined Tretter's potential liability in a lengthy footnote and, finding none, ruled that Tretter's joinder was unfounded and jurisdiction in this Court on the basis of diversity was proper.

Plaintiffs then filed an amended complaint, and both Accuratus and Brush moved to dismiss. This Court granted dismissal of several counts of the complaint; the dismissal included the negligence claim against Accuratus, for reasons more fully recounted below. All that remained were a claim for strict liability for abnormally dangerous activity against Accuratus, negligence and two strict liability claims against Brush, and separate counts for exemplary damages and Mr. Schwartz's loss of consortium against both Defendants. After this Court declined to certify its dismissal of the negligence claim against Accuratus for interlocutory appeal, Plaintiffs settled and voluntarily dismissed with prejudice all claims against Brush and also voluntarily dismissed with prejudice the remaining claim against Accuratus (though the counts for exemplary damages and loss of consortium were not specifically dismissed, they were of course dependent on the other claims). This terminated the case, allowing Plaintiffs to appeal this Court's dismissal of the negligence claim against Accuratus.

As more fully explained in the discussion below, that dismissal of the negligence claim against Accuratus was based on this Court's reasoning that New Jersey precedent should be interpreted to limit take-home liability to spouses of the employees who carry home dangerous substances from defendant employers. On appeal, the Third Circuit certified the question to the New Jersey Supreme Court for further clarification. The New Jersey Supreme Court's response did not draw any specific conclusions about this particular case, but it did clarify that there should be no bright line limiting the duty to spouses and provided some factors to consider in determining whether there is a duty

based on the circumstances of each take-home exposure case. In turn, the Third Circuit vacated this Court's dismissal of the negligence claim against Accuratus and remanded for further consideration in accordance with its own ruling and the New Jersey Supreme Court's guidance. This Court ordered supplemental briefing and oral argument, and now considers the motion to dismiss anew with respect to the negligence claim against Accuratus.

Discussion

     An understanding of the issue for this remand must begin with a fuller description of this Court's reasons for the previous dismissal. This Court first determined that the negligence claim presented a false conflict situation and ruled that New Jersey law applied. As explained in the prior opinion, the New Jersey Supreme Court had allowed for take-home exposure liability in the case of *Olivo v. Owens-Illinois, Inc.*, holding that companies working with asbestos "owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on contaminated clothing." 895 A.2d 1143, 1149 (N.J. 2006). This Court noted that *Olivo* contained some language suggesting that the class of plaintiffs covered by take-home liability should be interpreted narrowly, including reference to "harm to a particular individual," *id.* at 1148, and countervailing concerns about "considerations of fairness and policy" and "limitless exposure to liability" *id.* at 1148, 1150. The *Olivo* court further described the duty as "focused on the particularized foreseeability of harm to the

plaintiff's wife, who ordinarily would perform typical household chores that would include laundering the work clothes worn by her husband." *Id.* at 1150.[1]

This Court was considerably influenced by an earlier ruling in the case made before the matter was transferred to the undersigned. In that decision, Judge C. Darnell Jones had already dismissed the claims against Tretter, a safety supervisor at Accuratus. As explained in the undersigned's prior opinion, Judge Jones had concluded that:

> Because Tretter's connection with Plaintiffs was through Accuratus, and because of the timeline, the only causal routes from Tretter to Brenda are either through Paul, before Brenda was married to or lived with him, or through Altemose, to whom Brenda was of course never married. Judge Jones held that the Olivo rule of take-home liability for clothes-handling spouses could not be extended to cover either a non-spouse, non-connubial roommate (Brenda's relation to Altemose) or a non-cohabiting, unmarried romantic partner (Brenda's relation to Paul when he worked at Accuratus).

In other words, this Court had already essentially ruled that exposure chargeable to Tretter through his work at Accuratus could not ground a claim because Tretter and Accuratus were never linked to Mrs. Schwartz through a spousal relationship or even romantic co-habitation. Under those circumstances, the undersigned was reluctant to change the law of the case and conclude that New Jersey's take-home liability should cover Accuratus itself. The remand forces this Court to reconsider that position because, notwithstanding Judge Jones's decision regarding Tretter,[2] the New Jersey Supreme Court's further guidance forecloses reliance on a strict rule that limits the take-home exposure duty to spouses.

---

[1] Given that this Court has been instructed to broaden its interpretation of *Olivo*, it is worth noting that in contrast to the language about particular individuals highlighted in this Court's prior opinion, *Olivo* does also state that liability in these cases "devolves to a question of foreseeability of the risk of harm to that individual *or identifiable class of individuals*." *Olivo*, 895 A.2d at 1148 (emphasis added).

[2] It is conceivable that the claim against Tretter could be distinguished through choice-of-law analysis because he was a Pennsylvania citizen, but such a determination is unnecessary to this decision.

The Third Circuit certified to the New Jersey Supreme Court the following question: "Does the premises liability rule set forth in *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143 (N.J. 2006), extend beyond providing a duty of care to the spouse of a person exposed to toxic substances on the landowner's premises, and, if so, what are the limits on that liability rule and the associated scope of duty?"

The New Jersey Supreme Court's response emphasized courts' "stewardship of the common law" and flexibility in developing rules on a fact-sensitive, case-by-case basis. *Schwartz v. Accuratus Corp.*, 139 A.3d 84, 90 (N.J. 2016). Given that approach, the court explained that the *Olivo* holding did not establish a hard and fast spousal limit on the take-home exposure duty:

> *Olivo* does not suggest that the duty recognized must remain static for all future cases—no matter the pleadings and proofs, including unknown aspects of other toxins—and that take-home toxic-tort liability must remain limited to a spouse handling take-home toxins. That simply was an essential fact of the case on which we were called on to act, as a court of common law, and determine whether, in the development of our common law, a foreseeable duty could be recognized on the facts presented. We held that it could. However, *Olivo* does not state, explicitly or implicitly, that a duty of care for take-home toxic-tort liability cannot extend beyond a spouse. Nor does it base liability on some definition of "household" member, or even on the basis of biological or familial relationships.

*Id.* at 90-91. Though the court refused to endorse a categorical limit, the opinion did "note that no precedent from another jurisdiction, in a non-strict liability setting, has found a duty in a take-home toxic-tort cause of action outside of a factual setting involving household members, presumably because of the idiosyncratic nature of most other interactions with a take-home toxin." *Id.* at 91. Further, "chance contact with a worker transporting home a toxic substance from another's premises should not suffice to create a duty of care." *Id.* at 92.

The court declined to give particular answers for this case, stating that "a refined analysis for particularized risk, foreseeability, and fairness requires a case-by-case assessment in toxic-tort settings." *Id.* The court reiterated the "paramount importance of foreseeability" in that case-by-case assessment but noted that "considerations of fairness and policy also inform the analysis as to whether a duty of care exists." *Id.* (quotation omitted). Finally, to guide the analysis in particular cases, the court pointed to several important factors:

> First, case law counsels that the relationship of the parties is, of necessity, relevant and weighty. That would include an assessment not only of the relationship between a defendant's employee and the person who is exposed to the take-home toxin, but also the relationship between the defendant itself and the injured person, in determining whether it would be foreseeable, predictable, and just to find that the defendant owed a duty of care to that injured person or class of individuals. To that end, idiosyncratic encounters would be difficult to ever predict, even when occurring within the home of the person on whom the toxin is transported. Second, the opportunity for exposure to the dangerous substance and the nature of the exposure that causes the risk of injury affects the foreseeability analysis. Third, and related to the second factor, courts must take into account the employer's knowledge of the dangerousness of exposure, assessed at the time when the exposure to the individual occurred and not later, when greater information may become available. In a non-strict-liability negligence action, the dangerousness of the toxin, how it causes injury, and the reasonable precautions to protect against a particular toxin are relevant in identifying a foreseeable duty by a landowner for off-premises exposure of dangerous toxins.

*Id.* at 91-92 (citation omitted).

This Court now considers that guidance with respect to the facts of this case, looking first at the intertwined second and third factors just identified. These factors concern the nature of the particular toxin's dangerousness and the defendant's awareness thereof as well as the available safety procedures. Plaintiffs have argued in this case that beryllium is a particularly insidious toxic substance. As alleged in the amended

complaint, beryllium particulate can easily spread around and beyond the facility where it originates, and may even be carried to a worker's home on clothing. Once in a particular location, beryllium particulate may in a sense lay in wait and become equally dangerous after a period of time if it is cast back into the air by activities like vacuuming, dusting, and laundering. The negative consequences that may follow beryllium exposure are quite severe, including lung disease, dermatologic disease, cancer, or chronic beryllium disease (as Mrs. Schwartz has), which may involve lung scarring, cough, fatigue, progressive shortness of breath, and problems with other organs, among other symptoms. In their briefing since before the appeal, Plaintiffs have further argued that beryllium, unlike other toxic substances, does not have a clear dose-response; in other words, greater exposure does not necessarily correlate with higher severity of harmful effects, and extremely minor exposure may have severe consequences. Although this particular point does not seem to be present in the amended complaint, there is little reason to require Plaintiffs to formally add the allegation; they have argued it for some time, Defendant is clearly on notice of the argument, the fact is represented in prior case law, and the parties can easily address it further at the summary judgment stage if warranted. As for preventive measures, at the very least a clothes-changing protocol seems to have been obvious and relatively simple, because prior Defendant Brush employed such a procedure while Accuratus did not (though Plaintiffs originally claimed even Brush's protocol was inadequate). In sum, this case allegedly concerns a toxin that was known to travel on clothes to workers' homes, can remain dangerous in the home for some time, and importantly, can cause serious damage with only minimal exposure.

This Court's prior opinion already described the relevant relationships of the parties. For a period of some months, Mrs. Schwartz dated the eventual Mr. Schwartz while he worked for Defendant, frequently visiting his apartment and staying overnight. Also living in the apartment was Gregory Altemose, another employee of Defendant. Eventually, after Mr. and Mrs. Schwartz were married and Mr. Schwartz left Defendant's employ, Mrs. Schwartz moved in to the apartment and lived there while her now-roommate Altemose continued to work for Defendant. In addition to sharing space, Mrs. Schwartz cleaned the apartment and did at least some laundry for both men. The length of this period as roommates is not set forth in the complaint and is another matter that might be relevant on summary judgment; however, despite Defendant's focus on the very long, forty-year span at issue in *Olivo*, it is not clear that foreseeability and duty are smoothly proportional to an increase in the time period. It may be that a temporary arrangement of a week or a month carries little weight, while a period of two years, one year, or even several months carries about the same weight as forty years. This seems particularly true when dealing with a toxic substance like beryllium, which may cause harm upon quite limited exposure.

There appears to be no particular direct relationship here between Mrs. Schwartz and Defendant. *See id.* at 91 ("That would include an assessment not only of the relationship between a defendant's employee and the person who is exposed to the take-home toxin, but also the relationship between the defendant itself and the injured person …."). In some cases a defendant employer/landowner might have some particular relationship with or knowledge of the injured party, such as perhaps inclusion on the employee's insurance policy or familiarity from company social functions, but the

absence of a direct relationship does not seem to count much against duty and liability. As a simple fact of human life, an employer must reasonably foresee that virtually all of its employees live with or have repeated close contact with *someone*, unless there is good reason to believe that its employees are disproportionately hermits and loners.

Taken together, the nature of the toxic substance and the relationships in this case are sufficient to generate a duty. To be sure, Mrs. Schwartz never had the heavy legal relationship of marriage with an employee of Defendant (at least not during initial contamination—it may be that she was later exposed to re-suspended beryllium particulate that had actually been brought to the home by the man who was then her husband at the time she was exposed). But given this particular toxin's danger with minimal exposure and potential for re-suspension into the air, the duty-creating relationship threshold in this case must be considered relatively low. That is to say, if Defendant knew just a brief exposure could cause harm, this is not a case where the law should insist upon the closest, longest, most serious relationship. It might still be inappropriate to impose upon Defendant a duty to a random stranger on a bus or an occasional visitor to the home of an employee. But a roommate, and alternately a girlfriend making frequent visits and overnight stays, is not as a matter of law too remote to entail foreseeability and create a duty. Because the analysis is, as the New Jersey Supreme Court instructed, extremely sensitive to the particular facts of each case, a different conclusion may be reached at the summary judgment stage, but the allegations are sufficient at this point.

Bearing in mind that "considerations of fairness and policy" are always important, *id.* at 92, it is worth noting that, wholly apart from questions of whether the relationships

are close enough, the need to sort out causation will provide some limits on toxic substance take-home liability. Because minor exposure may cause problems, it seems possible that a stranger on a bus or in a store could be harmed by coming into contact with a beryllium worker. But such a stranger is unlikely to even figure out how she was exposed, let alone prove it in court. On the subject of policy, the Court must also note that it has given no weight to the present-day realities of non-married cohabitation, which Plaintiffs emphasize and Defendants decry as inapplicable to a claim for conduct a few decades ago. The only reality of living arrangements necessary to the Court's conclusion is the fundamental recognition that nearly all people at all times have close relationships with others, have regular contact with others in their homes, and in most cases live with others who share space and housework. That reality means it may be reasonably foreseeable to a Defendant employer working with a particularly insidious toxic substance that material carried home on an employee's clothes may harm someone at that home who is a frequent overnight guest and romantic partner or a roommate sharing living space and housework.

Conclusion

    This Court's prior grant of Defendant's motion to dismiss the negligence claim at issue was vacated on appeal. After applying the new legal guidance set forth during that appeal process to the particular facts of this case, this Court now denies the motion to dismiss and allows the negligence claim against Defendant Accuratus to proceed. Plaintiffs' amended complaint also stated claims in counts nine and ten for exemplary damages and loss of consortium. The only ground asserted for dismissal of those claims

in the original motion to dismiss was that they were derivative of the other counts, and in fact, neither of them was ever actually dismissed, not by this Court's order nor by Plaintiffs' voluntary dismissal. Those claims, therefore, may also proceed to the extent they derive from the negligence claim against Accuratus.